(No. 4667-

KANEVILLE GRAIN AND SUPPLY COMPANY, AN ILLINOIS CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 28, 1956.*

BENSON AND MAIR, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; MARION G. TIERNAN, Assistant Attorney General, for Respondent.

Wham, J.

This case involves a claim for damages in the amount of $1,434.32 based on the alleged negligence of an inspector, who was employed by the Department of Agriculture, State of Illinois, Weights and Measures Branch.

The facts are as follows: Claimant, Kaneville Grain and Supply Company, An Illinois Corporation, located at Kaneville, in Kane County, Illinois, and engaged in the business of selling general farm supplies, grain, feed, seed, hardware, lumber and building supplies, was the owner of a platform type scale, known as a Fairbanks Wagon Scale, which it used in its business. The platform of the scale was 22 feet in length and 8 feet in width. The pivots, brackets and other weighing levers were located beneath the platform, and the weigh-beam was located in the office of claimant adjacent to the scale platform.

On November 9, 1954, Mr. Joe M. Hess, while pursuing his duties as an Inspector of Scales for the State of Illinois, backed respondent's 39,000 pound truck partially upon the scale platform in making an official inspection, at which time the platform collapsed into the pit, breaking the scales, rendering them inoperative, necessitating their repair, and resulting in the loss of use of the scale for a twenty day period.

Claimant's witness, John Vincent Burns, a scale mechanic with the Fairbanks Morse Company, testified that there was a definite distinction between a wagon scale and a motor truck scale, namely, that a motor truck scale was designed to carry its full rated capacity at any point on the scale, while a wagon scale is designed to carry its full rated capacity when distributed

over the surface of the scale, and to carry no more than 60% of its rated capacity at any given point on the scale. This was not disputed by respondent.

The particular scale in question was not designated as either a truck scale or a wagon scale. The only designation appearing thereon with reference to its capacity was the weigh-beam, which indicated a capacity of 30,000 pounds.

After the damage to the scale, it was converted from a wagon scale to a motor truck scale. No change was made in the beam, nor was the total load-bearing capacity increased. The only effect of the conversion was to thereafter allow the placing of the total capacity of 30,000 pounds upon one end of the scale without causing an overload.

The amount of weight placed on one end of the platform when the two rear wheels of the inspector's truck were backed thereon was 29,960 pounds. This amount would have been proper had the scale been of the motor truck type, but exceeded the amount, which could properly be placed on one end of a 30,000 pound capacity wagon type scale, by 11,960 pounds.

Mr. Hess testified that he did not know the scale was a wagon type, and stated that inspecting the beam was the only method he used to determine the amount of weight the scale could bear. He further stated that, aside from the capacity shown by the beam, in order to determine the type of scale, it would be necessary to go underneath the platform and inspect the working parts.

He testified that he looked at the beam of claimant's scale prior to moving the back wheels of the truck thereon, and noted the capacity. He assumed, without further inquiry, that the scale was a motor truck type, and

would bear the weight of the back wheels of the truck, being 29,940 pounds on one end of the platform. He estimated that only one out of one hundred scales inspected by him during the course of a year were wagon scales. Claimant's witness, Mr. Burns, estimated that 5 to 10% of the scales used were wagon scales.

Mr. Robert C. Landis, President of the claimant corporation, knew at the time of the accident that claimant's scale was a wagon type. He testified that he was present when the inspector came into claimant's office on the date in question, and announced he was there to test the scale. Nothing was said by Mr. Landis, nor did the inspector make any inquiry.

The same scale had been tested in March of 1953 by Mr. Hess, who, at that time, used a series of eighteen one thousand pound weights. He did not, on that occasion, drive his truck upon the scale for the stated reason that the rear wheels of the particular truck he was then driving weighed 31,600 pounds.

These are the pertinent facts appearing from the testimony. The determination as to whether respondent's inspector was negligent in placing 29,960 pounds on one end of this particular scale rests upon the consideration of whether he should have determined the type of the particular scale before placing the weight thereon. If he had knowledge that it was a wagon scale, rather than a motor truck scale, then, under the evidence, he would have been clearly negligent in placing that much weight on one end of the platform.

The testimony of claimant's witness Burns, which was undisputed by respondent, established that a wagon scale could not be subjected at one end of the platform to more than 60% of the scale's total capacity, which per-

centage in this instance amounted to 18,000 pounds. From these facts, the scale was overloaded by 11,960 pounds.

Although the law, in our judgment, would not require an inspector to make a search under the platform in order to determine the type of scale he was to inspect, we believe that a reasonable inquiry from claimant's officers or employees should have been made before the testing began. Mr. Landis, President of claimant company, knew this fact, was present in the office when the inspector arrived, and would have given the information if asked.

The inspector knew that there were at least a few wagon scales in use in his territory, and could not assume that this particular scale was not one of them merely from an inspection of the beam.

Respondent contends that the scale's capacity of 30,000 pounds appearing from an inspection of the beam is determinative of the question, and that the inspector was entitled to presume therefrom that the scale was a motor truck scale, 30,000 pound capacity, and would withstand the full capacity upon one end of the platform.

We do not subscribe to this reasoning.

Nothing in the "Tolerance and Specifications on Weights and Measures and Weighing and Measuring Devices" offered by respondent as exhibit No. 2, attaches such meaning to the stated capacity.

The particular portions thereof cited by respondent are as follows:

Scales, general specifications—1, page 45, "The nominal or rated capacity of a scale is the largest weight indication, which can be obtained by the use of all its reading or recording elements in combination". Sec. 2,

page 46, "All scales not equipped with a beam or reading face graduated to the full capacity of the scale, and those not equipped with a graduated beam or reading face, which, taken into connection with another graduated beam or beams or with a graduated runner, indicates the capacity of the scale, shall have the normal or rated capacity conspicuously, clearly, and permanently marked upon them". Sec. 3, page 46, "All scales shall be of such construction that they will support a load of maximum capacity without undue bending or straining of the parts".

To us, these regulations simply mean that a particular scale must be capable of supporting and weighing a load of the stated capacity, and have no reference to such scale bearing the entire capacity when placed upon only one end of the scale.

The 30,000 pound capacity appearing from the beam of claimant's scale in no way indicated whether it was a wagon scale or a motor truck scale.

Respondent's contention that Mr. Landis was negligent in failing to so designate the type of this scale is not well taken. The regulations made no such requirement, nor did he have reason to believe that the inspector would drive his truck upon the scale, inasmuch as the inspector had never done so before, and had always tested the scale by using several movable test weights of one thousand pounds each.

The evidence established that the scale had been placed in good working condition during the summer months of 1954, and it is reasonable to presume it was in good condition on the date in question, since it had been used continuously in claimant's business.

We, therefore, find from the evidence that respondent was negligent by reason of the inspector failing to make reasonable inquiry to ascertain the type of scale before making the test with the amount of weight used, that claimant was free from contributory negligence, and that respondent's negligence was the proximate cause of the damage to the scale.

The evidence established that subsequent to the occurrence the scale was converted to a motor truck scale, and repaired for a total cost of $1,018.14. It was further established that said amount was less than would have been required had the necessary parts for repairing a wagon scale been procured, inasmuch as they were no longer in production, and it would have been necessary to make them by hand.

Claimant also contended that it lost business profits during the 20 day period required to repair the scale. Testimony with respect to this element of damage was speculative in nature, being based solely upon business in previous years during the same comparable period of time. The record is silent as to whether any attempt was made by claimant to procure the use of a suitable scale in the locality during the period this scale was unusable. We have no way of knowing whether the amount claimed, to-wit, $560.00, is reasonable, and within the cost of temporarily renting the use of a substitute scale. For us to fix an amount on this element of damage would be absolute speculation on our part. We, therefore, will deny this portion of the claim.

From the record submitted to us, we believe the portion of the claim based upon the cost of repairing the scale should be allowed, and, therefore, award claimant the amount of $1,018.14.